UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ERIC JERMAINE HARVEY,

        Plaintiff,

v.

R. DEPKY et al.,

        Defendants.
_____/

Case No. 1:20-cv-517

Honorable Paul L. Maloney

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's Eighth Amendment and due process claims against Defendants Depky and Ward. Plaintiff's First Amendment retaliation claims against both officers remain in the case.

**Discussion**

**I.      Factual Allegations**

Plaintiff presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility, (LRF) in Muskegon Heights, Muskegon County, Michigan.  The events about which he complains, however, occurred at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan.  Plaintiff sues DRF Correctional Officers M. Depky and R. Ward.

Plaintiff alleges that, on March 16, 2018, he was laid in from his prison job as a second-shift lead cook, pending investigation of an unspecified matter.  On June 1, 2018, he returned to work, after having been cleared of any misconduct.

That afternoon, Defendant Depky came into Food Service at about 3:00 p.m.  Depky challenged Plaintiff about his presence in Food Service, saying that Plaintiff was out of place.  Plaintiff explained that he had been returned to his detail and was not out of place.  Defendant Depky responded that, if Plaintiff was lying, Depky intended to write a major misconduct for being out of place.  Depky then spoke with Mrs. Dotty, the food service supervisor, who confirmed that Plaintiff was telling the truth.

On Defendant Depky's next round in food service, he approached Plaintiff and told him that he had better watch his step and that, if Depky even suspected that Plaintiff was doing something wrong, he would be "done."  (Compl., ECF No. 3, PageID.46.)  Plaintiff told Defendant Depky that, if Depky did not stop harassing him, Plaintiff would write a grievance.  Defendant responded that it would be hard to write grievance from segregation.

Shortly thereafter, Mrs. Dotty called for the kitchen workers to eat.  Plaintiff asked Mrs. Dotty if it would be alright to get an apple instead of a banana.  Mrs. Dotty agreed.  However, when Defendant Depky saw Plaintiff take an apple, he told Plaintiff that he was writing a ticket

2

against him for taking an apple, since bananas were the fruit on the menu. Plaintiff responded that he had permission, and Mrs. Dotty told Defendant Depky that she had approved it. Defendant became upset, stating that prisoners could do whatever they wanted, because Mrs. Dotty would defend them. Mrs. Dotty told Defendant that he was being very unprofessional.

After Plaintiff finished his meal, he stood in line to be searched. Defendant Depky told Plaintiff to empty his pockets, and Plaintiff complied, removing a personal bottle of seasoning. Defendant Depky took the seasoning and moved it aside. When Plaintiff asked why his seasoning had been removed, Defendant Depky responded that kitchen workers were not allowed to bring seasoning to the chow hall, so the item was contraband. Plaintiff cited to dining room rule #8, which permitted inmates to bring into the dining room seasoning purchased from the prisoner store. Defendant Depky told Plaintiff that, if Plaintiff made Depky write a contraband form, Depky would write a major misconduct ticket and get Plaintiff fired from his job.

Plaintiff went to the second-shift sergeant to complain, and the sergeant ordered Depky to fill out a contraband-removal form. Defendant Depky later came to Plaintiff's unit and asked Officer St. Germaine to call Plaintiff to the officer's desk. Depky threatened that, if Plaintiff made him fill out a contraband form, Depky would also write Plaintiff a major misconduct ticket. Plaintiff told Depky to do what he had to do, but Plaintiff wanted his copy of the contraband form. That same night, Plaintiff wrote a grievance against Defendant Depky for his actions. Later that night, Sergeant Ward (not a Defendant) attempted to get Plaintiff to sign off on the grievance, but Plaintiff refused.

On June 10, 2018, Plaintiff was called to the officer's desk. The officer filled out a kite and told Plaintiff to report to the control center. At the control center, Sgt. Ward again tried

to get Plaintiff to sign off on the grievance.  Plaintiff refused and asked Sgt. Ward to stop calling him out for the same thing.  Plaintiff then asked to be excused to go to his gym call-out.

When Plaintiff arrived at the school building, Defendant Officer Ward asked why Plaintiff was late for his call-out.  Plaintiff responded that he had been called to the control center.  Defendant Ward asked why, and Plaintiff told him that it was not his business.  Plaintiff learned the next day that Defendant Officer Ward had spoken with Sergeant Ward.  Defendant stated, "[S]o if it ain't the guy who likes writing grievances." (*Id.*, PageID.47.)  Ward then demanded whether Plaintiff had a call-out to be in the school building.  Plaintiff responded that he did not need a call-out to check out recreation equipment.  Defendant Ward then threatened to write Plaintiff a misconduct ticket for being out of place.

The following day, Plaintiff was called to the desk by Sgt. Crandall[1] (not a Defendant) to be reviewed on the ticket issued by Defendant Officer Ward.  Plaintiff explained that he did not need a call-out to sign out recreation equipment.  Crandall responded that if he had evidence that he checked out equipment, he could bring it to the hearings officer and the charge would be dismissed.  On the date of the hearing, Resident Unit Manager (RUM) Dunigan (not a Defendant) asked how he pleaded, and Plaintiff responded that he was not guilty.  Plaintiff presented a copy of the rec room sign-in sheet, showing that he had intended to sign out a basketball, in exchange for his identification card.  Plaintiff explained that he had asked to speak with someone in the rec room, but he was not out of place.  Dunigan stated that he wanted nothing to do with the situation, that he was finding Plaintiff guilty of the misconduct ticket, and that Plaintiff could appeal the decision.  Plaintiff appealed and received a response from the deputy warden.  The deputy warden concluded that Plaintiff's identification card was, in fact, on the rec-

---

[1] Plaintiff alternately spells the name "Crandall" and "Crandell."  The Court hereafter uses "Crandall," because it is the most common spelling Plaintiff utilizes.

4

room request, but that Plaintiff would be found guilty because he attempted to go into the weight room.

Plaintiff wrote a grievance on July 20, 2018, complaining about the mishandling of the misconduct charge by the hearing officer and the deputy warden. Plaintiff never received a response. Although Plaintiff still had a copy of the grievance, he could not appeal, because he did not have a grievance identifier. On December 12, 2018, Plaintiff was approached by prisoner Keith Harvey, who gave Plaintiff the response to Plaintiff's grievance, indicating that it had been mistakenly delivered to Keith Harvey, rather than Plaintiff Eric Harvey. Plaintiff asked Keith Harvey to write an affidavit about receiving Plaintiff's mail, and Keith Harvey did so, obtaining a notarization from the unit counselor.

After seven months, Plaintiff was told to report back to food service. On February 22, 2019, Mrs. Dotty told Plaintiff to push a food cart to building 500. Plaintiff arrived at the unit at the same time Defendant Ward made it to the gate, inadvertently blocking Defendant Ward's way. Defendant Ward told Plaintiff to go back to his unit and that he was laid in for a major misconduct ticket. Plaintiff went back, first informing Mrs. Dotty about the pending ticket. He was later told by Mrs. Dotty to report to work, as no misconduct ticket was pending.

A few weeks later, Defendant Ward worked in the 900 building, where Plaintiff was housed. On March 14, 2019, Plaintiff reported to work at 5:15 a.m. At 10:00 a.m., Plaintiff returned to his unit for count. On his way, Plaintiff encountered several inmates, who asked why Plaintiff's name was being called all morning. When he made it back to his unit, he went straight to the officer's desk. Officer Henry told Plaintiff that he had not called Plaintiff, but that the officer doing rounds had called him. Officer Henry advised Plaintiff to go see what the officer wanted. Plaintiff went up the stairs to see why he was being called. He saw Defendant Officer Ward and

5

asked why Ward was calling him. Defendant Ward responded that Plaintiff did not belong on B-wing. Ward also told Plaintiff that he had been told by Plaintiff's cellmate that Plaintiff was at work. Plaintiff told Defendant Ward that he had been worried that something had happened to his family. Plaintiff returned to his cell for count.

After count, Plaintiff returned to the kitchen and completed his work detail. He then went to his cell for a nap. When Defendant Ward saw Plaintiff return to his cell, he told him to go to the day room while Ward did a cell check. Defendant Ward went into the cell at about 1:40 p.m. and left at about 2:05 p.m., taking with him a bag of Plaintiff's property. Plaintiff asked why he was taking property, and Defendant Ward responded that it was all contraband. Ward stated that, if Plaintiff made him complete a contraband form, he would write a major misconduct charge and have Plaintiff sent to segregation. Plaintiff questioned what Ward could have confiscated, as Plaintiff possessed nothing. Defendant Ward referenced finding a hair net and a bread guard, which constituted theft, and a bread tie containing metal, which was dangerous contraband. Plaintiff disputed Defendant Ward's taking of the contraband but walked away. When the second shift reported, they allowed Plaintiff to go to the trash to retrieve most of his items.

The following day, March 15, 2019, Sgt. Platte approached Plaintiff at work on a ticket review. Plaintiff learned that Defendant Ward had pressured Officer Henry, a new officer, to write a ticket against Plaintiff for disobeying a direct order. Plaintiff spoke with the first-shift lieutenant about his concerns that Defendant Ward would plant a weapon on him or do something else serious, as he had a history of doing so. The lieutenant told Plaintiff that he was being paranoid and that he would take care of it.

In the afternoon of March 16, Plaintiff spoke with Officer Henry about why Henry had lied on the major-misconduct ticket. Henry responded that he did not know that Defendant Ward would react like he did. Henry stated that he would never have asked Plaintiff to go speak with Ward if he had known they had a problem. Plaintiff told Henry that he had lost his job because of the misconduct, which prevented him from earning money to call his daughters. Plaintiff needed to call his daughters regularly, because their mother had died of breast cancer. Officer Henry told Plaintiff that there was nothing he could do; it was too late. Plaintiff asked Henry to speak to the hearing officer and have him throw out the misconduct. Henry replied that Plaintiff could tell the hearing officer to talk to him.

On March 22, 2019, when Plaintiff was called out for a hearing, he told RUM Beecher what Henry said. Beecher, however, refused to allow Henry to recant his story, because it would incriminate him. Plaintiff complained that he had lost his job and his place on the list for the dog program because of lies. Beecher, however, found Plaintiff guilty. Plaintiff appealed to the deputy warden. Plaintiff also spoke with the first-shift captain about the issue that day and again on March 27, 2020, but nothing was done.

On March 31, 2019, Officer Henry again worked in building 900, and Plaintiff asked for a written statement, which Henry provided. The deputy warden refused to consider the statement, however, because it was not presented at the hearing. The deputy warden affirmed the misconduct determination and subsequently denied Plaintiff's motion for reconsideration.

Plaintiff alleges that Defendants Depky and Ward retaliated against him for making proper statements, threatening to file grievances, and filing grievances, in violation of Plaintiff's rights under the First Amendment and prison policy. Plaintiff also alleges that Defendant Depky violated his right to due process by threatening to take and taking Plaintiff's property. In addition,

7

Plaintiff argues that Defendants denied him equal protection under the Fourteenth Amendment. Further, he asserts that Defendants harassed him, bullied him, and verbally abused him, in violation of his rights under the Eighth Amendment.

Plaintiff seeks declaratory relief, together with compensatory and punitive damages.

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. Due Process

Plaintiff contends that Defendants Depky and Ward both deprived him of his property without due process, by confiscating his seasoning or confiscating his cell property, respectively. Plaintiff also suggests that Defendants deprived him of due process by alleging misconduct that resulted in the loss of his prison employment.

To the extent that Plaintiff complains about the taking of his prisoner property, his procedural due process claims are barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's

9

failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. Mich. Dep't of Corr., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's due process claims will be dismissed.

To the extent that Plaintiff complains that he was deprived of his prison employment without due process, Plaintiff also fails to state a claim. The Sixth Circuit has consistently found that prisoners have no constitutionally protected liberty interest in prison employment under the Fourteenth Amendment. *See, e.g.*, *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987)

10

("[N]o prisoner has a constitutional right to a particular job or to any job"); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (same).  Moreover, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter*, 69 F. App'x at 680 (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991), and *James v. Quinlan*, 866 F.2d 627, 629-30 (3d Cir. 1989)).  Under these authorities, Plaintiff fails to state a due process claim arising from the termination of his prison employment.

## IV.     Eighth Amendment

Plaintiff contends that Defendants Depky and Ward violated his rights under the Eighth Amendment by subjecting him to harassment.  The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain."  *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities."  *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement."  *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."  *Ivey*, 832 F.2d at 954.

To the extent that Plaintiff alleges that Defendants verbally harassed him, he fails to state a claim.  The use of harassing or degrading language by a prison official, although

unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment.").

Moreover, to the extent that Plaintiff alleges that Defendants' string of harassing conduct, such as extra cell searches and misconduct charges, collectively amounted to cruel and unusual punishment, he also fails to state a claim. Allegations about temporary inconveniences, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006)). Although Plaintiff was found guilty of certain Class-II misconduct charges and lost his prison job,

none of the alleged injuries inflicted by Defendants rises to a deprivation of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347.

Accordingly, Plaintiff fails to state an Eighth Amendment claim against Defendants Depky and Ward.

**V.      Equal Protection**

Plaintiff makes the conclusory assertion that Defendants' actions denied him his rights under the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Plaintiff does not suggest that he is a member of a suspect class, and "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir. 1998). In addition, prisoners do not have a fundamental right to photocopies under the Constitution.

Because neither a fundamental right nor a suspect class is at issue, Plaintiff's claim is reviewed under the rational basis standard. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006); *Harbin-Bey v. Rutter*, 420 F.3d 571, 576 (6th Cir. 2005). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)). To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and

13

that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiff's allegation of discriminatory treatment is conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Plaintiff fails to allege sufficient any facts identifying a similarly situated person who was treated differently. To be similarly situated, "the comparative [prisoner] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it.'" *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 460 (6th Cir. 2011) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)). Plaintiff therefore fails to state an equal protection claim.

## VI.     Retaliation

Plaintiff alleges that Defendants Depky and Ward retaliated against him for exercising his First Amendment rights. More specifically, Plaintiff contends that both Defendants harassed him, filed false misconduct tickets against him (resulting in the loss of his prison job), and took his property in retaliation for filing grievances.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the

14

defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Upon initial review, the Court concludes that Plaintiff has alleged at least one retaliation claim against both Defendant Depky and Defendant Ward.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court will dismiss Plaintiff's due process, equal protection, and Eighth Amendment claims against Defendants Depky and Ward, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  Plaintiff's retaliation claims against Defendants Depky and Ward remain in the case.

An order consistent with this opinion will be entered.


Dated:   July 17, 2020                                  /s/ Paul L. Maloney
                                                        Paul L. Maloney
                                                        United States District Judge